FILED

2021 JUN 16  AM 11: 48

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

_Ocala_ Division

|  |  |
|---|---|
| Jeremy Pinson | Case No. 5:21-cv-322 SPC-PRL |
| **Plaintiff(s)** | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |
| -v- | |
| Federal Bureau of Prisons | |
| **Defendant(s)** | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Jeremy Pinson |
| All other names by which you have been known: | Grace |
| ID Number | 16267-064 |
| Current Institution | USP-2 Coleman |
| Address | PO Box 1034 |
| | Coleman                FL              33501 |
| | City                       State          Zip Code |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

**Defendant No. 1**

| | |
|---|---|
| Name | Federal Bureau of Prisons |
| Job or Title *(if known)* | |
| Shield Number | |
| Employer | |
| Address | 846 N.E. 54th Terrace |
| | Coleman                FL              33521 |
| | City                       State          Zip Code |

☐ Individual capacity   ☒ Official capacity

**Defendant No. 2**

| | |
|---|---|
| Name | R.C. Cheatham |
| Job or Title *(if known)* | Warden |
| Shield Number | |
| Employer | Federal Bureau of Prisons |
| Address | 846 NE 54th Terrace |
| | Coleman                FL              33521 |
| | City                       State          Zip Code |

☑ Individual capacity   ☑ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3
  Name                      Gary Venuto
  Job or Title (if known)   Medical Doctor
  Shield Number             N/A
  Employer                  Federal Bureau of Prisons
  Address                   846 NE 54th Terrace
                            Coleman          FL        33521
                            City             State     Zip Code
  ☑ Individual capacity     ☐ Official capacity

Defendant No. 4
  Name                      J. Taylor
  Job or Title (if known)   Deputy Captain
  Shield Number             N/A
  Employer                  Federal Bureau of Prisons
  Address                   846 NE 54th Terrace
                            Coleman          FL        53521
                            City             State     Zip Code
  ☑ Individual capacity     ☐ Official capacity

## II.  Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),* you may sue federal officials for the violation of certain constitutional rights.

A.  Are you bringing suit against *(check all that apply)*:

☒ Federal officials (a *Bivens* claim)  28 U.S.C. 1331, 2201-02

☐ State or local officials (a § 1983 claim)

B.  Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

C.  Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

First Amendment, Eighth Amendment

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

28 U.S.C. 1331 (federal question)

## III.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐   Pretrial detainee

☐   Civilly committed detainee

☐   Immigration detainee

☐   Convicted and sentenced state prisoner

☒   Convicted and sentenced federal prisoner

☐   Other *(explain)* _____

## IV.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   If the events giving rise to your claim arose outside an institution, describe where and when they arose.

N/A

B.   If the events giving rise to your claim arose in an institution, describe where and when they arose.

Continued beginning on Page 12

C.   What date and approximate time did the events giving rise to your claim(s) occur?

See Page 12-21

D.   What are the facts underlying your claim(s)? *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*

See Page 12-21

## V.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Violation of my constitutional rights, sexual assault, intentional infliction of emotional distress, Mental and emotional trauma.

## VI.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

See Page 22

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**VII.    Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

USP Coleman 2

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

ALL

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ Yes          *Requested but never received*
☒ No           *necessary forms, was threatened*

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☒ No

E.    If you did file a grievance:

1.    Where did you file the grievance?

_____

2.    What did you claim in your grievance?

_____

3.    What was the result, if any?

_____

4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

_____

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

F.    If you did not file a grievance:

1.    If there are any reasons why you did not file a grievance, state them here:

Because I repeatedly submitted requests for administrative remedy forms, but they were not provided to me. Also I was threatened

2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

Continued on Page

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*(Note:  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.   Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☒ Yes

☐ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

The BOP has all of my legal records. I have filed alot of lawsuits that were dismissed and ___ qualify under the 28 U.S.C. 1915(g) exception in this case and ___ prepay the full filing fee. I list what I can but will need to supplement upon receipt of my files. But, 28 U.S.C. 1915(g) applies, in part, to this case, but its exception also applies.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.  Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.  If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit

    Plaintiff(s) _____

    Defendant(s) _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*

    _____

3.  Docket or index number

    _____

4.  Name of Judge assigned to your case

    _____

5.  Approximate date of filing lawsuit

    _____

6.  Is the case still pending?

    ☐ Yes

    ☐ No

    If no, give the approximate date of disposition. _____

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

    _____

C.  Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

[X] Yes

[ ] No

D.      If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

See Beginning of Sec. VIII at Page 8 herein, I don't
1.   Parties to the previous lawsuit   have my files and will need to supplement
     Plaintiff(s)   later this info. Continued on Page Page 23.
     Defendant(s)   _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

\

3.   Docket or index number

\

4.   Name of Judge assigned to your case

\

5.   Approximate date of filing lawsuit

\

6.   Is the case still pending?

[ ] Yes

[ ] No

If no, give the approximate date of disposition   _____

7.   What was the result of the case? *(For example: Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

\

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     6-7-2021

| | |
|---|---|
| Signature of Plaintiff | |
| Printed Name of Plaintiff | Jeremy Pinson |
| Prison Identification # | 16267-064 |
| Prison Address | PO Box 1034 |
| | Coleman                    FL        33521 |
| | City                    State        Zip Code |

### B.   For Attorneys

Date of signing:     _____

| | |
|---|---|
| Signature of Attorney | |
| Printed Name of Attorney | |
| Bar Number | |
| Name of Law Firm | |
| Address | |
| | City                    State        Zip Code |
| Telephone Number | |
| E-mail Address | |

A. Statement of Supporting Facts:

1. Defendant Federal Bureau of Prisons ("BOP" hereinafter) operates USP Coleman-2 which is part of the largest prison complex in the United States – FCC Coleman.

2. There is a serious, chronic, well-documented history of sexual abuse at FCC Coleman. (See Exhibit A, attached). This history includes retaliating against and abusing prisoners or staff who report sexual abuse. (id.).

3. The plaintiff is a transgender inmate serving a sentence of 21 years imprisonment. The plaintiff's appearance is feminine, and includes long hair, well-developed breasts, and other characteristics of a woman.

4. The plaintiff is outspoken and is considered an activist by many prisoners and staff because of her very public criticisms of the BOP. (See Exhibit B, attached). This has earned her significant animus from prison staff.

5. The plaintiff arrived to USP Coleman-2 after being assaulted 3 times at a prior penitentiary in Arizona in less than a year which required multiple hospitalizations. She arrived Jan. 7, 2021.

6. En route to USP Coleman-2 the plaintiff was physically and sexually assaulted by an officer at USP Atlanta after filing a PREA complaint against him for making threats of a sexual nature.

Page 12

7. In addition to a chronic sexual abuse problem at USP Coleman-2 the prison has a serious and chronic problem of introduction of drugs. Prisoners require medical attention locally or in a hospital near-daily from drug overdoses given its availability within the prison.

8. The presence of drugs contributes to a culture of violence and sexual abuse. Prostitution, coerced sexual activity, assaults are a regular part of the drug trade within USP Coleman-2. Staff, who must respond to frequent violence and PREA complaints as well as their discovery of drugs on a daily basis, are well aware of the violent and illicit drug trade within USP Coleman 2.

9. As part of their duties as Executive Staff at USP Coleman-2 defendants Cheatham and Taylor oversee the Special Investigative Services ("SIS" hereinafter) team of staff which includes SIA Brown, a Lieutenant, and technicians named Rivas, Pierre, Colon and others, who collect intelligence within the institution daily. Methods of collection include monitoring of telephone calls, mail, email communications, video surveillance footage, but critically also = inmate informants.

10. The plaintiff learned of a culture of retaliation and abuse at USP Coleman-2 the day she arrived. In a private interview, prison psychologist Dr. Sierra told Plaintiff "don't rock the boat" and opined "this place is crazy." Plaintiff took the warning seriously.

11. On Jan. 8, 2021 plaintiff sent a "Request to Staff" on TRULINCS to her unit manager outlining multiple requests, including those related to her gender dysphoria.

12. BOP Policy, Program Statement 5200.04, pg. 9, Sec. 12 states transgender inmates ~~may~~ May receive a "pat-search exception" (meaning, pat-search by female staff only). Prior to arrival to USP Coleman-2 plaintiff had a pat search exception for five years nearly across multiple prisons and was never misusing it.

13. Nevertheless, on Jan. 7, 2021 defendant Cheatham revoked the plaintiff's pat-search exception, resulting in part in plaintiff seeking administrative remedy forms on Jan. 8, 2021.

14. Instead of receiving the forms on Jan. 8, 2021 plaintiff within 10 minutes of receiving the email was approached by an officer who screamed at and threatened her for sending the email.

15. Also, on Jan. 8, 2021 Dr. Sierra arrived to plead with plaintiff to "be careful" asserting her needs because her unit manager Jeffrey Smith had told her to tell plaintiff she "can do her time in SHU if she wants to start filing already" among other statements. This was plaintiff's first confirmation that the USP Coleman-2 was being weaponized by staff.

16. Defendants Cheatham and Taylor have ordered conditions in SHU to be intolerably harsh and cruel.

17. The SHU is run by a crew of sadistic officers who regularly deny inmates recreation, toilet paper, meals, and use excessive force upon disfavored inmates such as those in SHU for reasons of their fear of violence in general population, or having said or written complaints against staff. Plaintiff has received a plethora of notes from SHU inmates asking her to help them stop the abuse of SHU Officers Luke and Parks.

18. Cheatham and Taylor dont just ignore the abuse in SHU, they have taken affirmative steps to render SHU as miserable as possible by limiting inmates to five-squares of single-ply toilet paper per day, banned purchase of any hygeine or sanitation items in SHU during a global pandemic, banned receipt or possession of any books, magazines or newspapers (including those of a legal or religious nature).

19. On Jan. 20, 2021 President Joseph Biden issued Executive Order 13988 prohibiting discrimination on the basis of gender identity or sexual orientation and directed BOP to review all its policies and revise them to accomplish this goal.

20. Additionally, Section 1557 of the Affordable Care Act prohibits discrimination on the basis of sex, which includes transgender accomodations.

21. As a result of her Jan. 8, 2021 email and history of activism the plaintiff became a target of staff from Day One at USP Coleman 2.

25. Years later, ~~Dee~~ Dee Farmer would say of her Supreme Court decision, "I would like for my legacy to be that I changed injustices for a multitude of people who were or would have suffered unjustly..." (Alison Flowers, "Dee Farmer Won a Landmark Supreme Court Case on Inmate Rights But That's Not the Half of It" The Village Voice, Jan. 29, 2014).

26. Indeed not. Smith assigned Plaintiff to a cell with Andrew Duggins — a White supremacist ex-member of the Aryan Circle gang. Duggins was a drug dealer for another white supremacist Michael Culp.

27. Culp, Duggins and another inmate — Stephen Hall — were also competitors in the institution drug trade, a fact plaintiff saw as dangerous and motivated her to ask her Case Manager Amy Ruiz to be moved pursuant to 28 CFR 115.42(d) or (e). To plaintiff's dismay, Ruiz — whose office was heavily decorated in Christian iconography and quotes — began to speak to the Plaintiff about "homosexuality" being "a sin". Ruiz, who made regular cell moves, refused plaintiff's request and instead told plaintiff to "study the bible for the peace you seek from the devil in your mind."

28. Plaintiff complained of Ruiz repeatedly to defendants Cheathan Taylor, BOP, and Smith but noone took action.

22. During a meeting with Unit Manager Smith on or about Jan. 11, 2021 Plaintiff expressed that she was housed alone but should not be due to a history of frequent suicide attempts. The plaintiff also asked Smith to consider 28 C.F.R. 115.42(d) and (e) when making her housing assignments. Smith stated he didnt know what 28 CFR 115.42(d) or (e) was and that he wouldnt be "taking orders from you, that woman Sierra from Puerto Rico, or Psychology period - I run my house" (emphasis in original verbal expression).

23. The plaintiff is aware that threats to trans women in federal prison is not a new problem. Transgender prisoners are frequently singled out for violence, in one study of transgender women housed in California Men's prisons 59% reported being sexually assaulted. (See Valerie Jenness et al., Violence in California Correctional Facilities: An Empirical Examination of Sexual Assault (Irvine: Center for Evidence Based Corrections, University of California 2007)). One federal judge held extensive hearings including testimony from a former BOP Assistant Director to conclude transgender inmates would likely vace abuse, violence, and trauma in BOP custody in United States v. D.W., 198 F.Supp.3d. 18 (E.D.N.Y.)(2016).

24. The Supreme Court's landmark ruling in Farmer v. Brennan, 511 U.S. 825 (1994) involved a transgender victim in BOP custody.

29. Instead, staff began harrassing plaintiff. On one occasion Officer Walczak was working her unit, and loudly called her a "feisty tranny" and ordered her to put her hands on the wall. Plaintiff verbally objected but physically complied. Walczak proceeded to aggressively grab plaintiff's breasts, genitalia during his pat search. He ended his search by stating "report that, your ass will be in SHU by lunchtime tommorow, Warden Cheatham hates fags."

30. Culp, Hall and Diggins eventually landed themselves in a mix of violence and investigations for their actions leading SIS investigators Pierre and Rivas to interview Plaintiff. The plaintiff was taken to an empty holding cell off-camera and questioned. The plaintiff explained the entire situation, but then asked to move to a different unit to avoid the continuing stress of living with a homophobic white supremacist drug dealer. Defendants Cheatham and Taylor were briefed on the matter but declined at that time to accommodate plaintiff. Hall was then let out of SHU where he began telling other inmates that staff members told him Plaintiff had put a PREA complaint on him when, in fact, staff knew Aeron Bush had done so. This led to substantial harrassment that continues to this day. Plaintiff reported this experience to the BOP in a tort-claim (see Exhibit C, attached). Nothing was done to help her.

Page 17

31. Eventually plaintiff convinced her counselor, Mr. Rodriguez, to move her into a cell with a different inmate, in Ruiz and Smith's absence from the unit. Rodriguez knew that numerous inmates had reported Ruiz on TRULINCS to the "DOJ Sexual Abuse Reporting" box for harassing them and plaintiff, and said he was "retiring soon" and "didn't care what Ruiz" said about him moving plaintiff. It did in fact plainly enrage Ruiz whom the plaintiff reported on TRULINCS to Cheatham, Taylor and BOP for her constant verbal and other tactics of harrassment.

32. The prison drug business, results in alot of trans inmates who engage in prostitution to obtain illicit drugs. Plaintiff is <u>not</u> one such inmate.

33. This did not stop inmates asking plaintiff to trade fellatio for drugs, to her near-constant frustration. One such drug group, inmates Dawkins, Price, Plex and another unknown named inmate were particularly persistent and were plainly told <u>NO</u> numerous times. Plaintiff referred to them derisively as the "Florida cartel".

34. The Florida cartel, was plainly brought to the attention of Cheatham, Taylor, SIA Brown, Rivas, Pierre for their drug introduction and sexual harrassment. Nothing was done until Dawkins had led to inmates Duggins, Jones, GoodBird to be violently assaulted and injured. Plaintiff had <u>repeatedly</u> warned that violence was imminent because of the Florida Cartel but defendants did <u>nothing</u> to stop their assaults or drug activities which continue to this day.

35. Plaintiff has good reason to fear the SHU outside of its current reputation and conditions. Plaintiff was here previously when SHU staff engineered the murder of an inmate in the SHU here. See United States v. Sharma, No. 6:09-cr-1-Orl-19RBJ (M.D.Fla.).

36. In the 2009 Sharma case, the United States presented the testimony of James Raby, a Special Agent of the FBI who had been the assigned full time resident agent at the Coleman FCC for years. During the course of performing investigations at FCC-Coleman of violations of federal law involving gangs, illegal narcotics trafficking, money laundering, civil rights, public corruption as well as assaults and homicides he testified he had gained extensive knowledge of how BOP staff deal with and retaliate against inmates who have cooperated with law enforcement including the methods and manner in which BOP employees have utilized their law enforcement power to identify cooperators and actions taken by the BOP employees to prevent inmates from cooperating with law enforcement authorities in investigations concerning BOP employees. The Court on March 17, 2009 ruled "evidence that the threat of violent retaliation against inmates who have provided information to authorities is real, palpable and not speculative." The Eleventh Circuit affirmed.

37. Not much has changed since <u>Sharma</u>. FCC Coleman in general, and plaintiff's facility in particular remain drug and violence infested dens of corruption.

38. Eight seperate inmates told Plaintiff that Ruiz was trying to incite violence against her. One inmate told plaintiff that Ruiz offered him a lesser-security transfer if he could help her "find dirt" on Plaintiff. He admitted to doing so and Ruiz charged plaintiff with "Phone Abuse" for calling her Mom on that inmates' phone and further helped expunge that inmates report but only after supplying other inmates the plaintiff's mother's name and telephone number. That inmate admitted to helping Ruiz and explained how she had engineered him to be charged alongside plaintiff so he wouldnt look like an informant but then assured the charge would be expunged at the DHO hearing because he - William Cox - feared Ruiz had used him and put him in danger and wanted to "come clean" out of fear of the other inmates whom he'd helped Ruiz convict to target plaintiff. The DHO, Ms. White said at Plaintiff's hearing "I know she targeted you and this is retaliation, but I cant expunge on that basis alone".

39. Then, an inmate sexually assaulted plaintiff while she was standing in pill-line. Plaintiff immediately filed a PREA Complaint but was again warned that if she kept reporting misconduct she'd "end up buried in the SHU, where its less safe."

Page 20

40 - Upon information and belief, one inmate was recently killed in SHU, and a second - Philip Rawnsley - died from complications of ingestion of drugs that were ultimately supplied to his unit by the Florida Cartel.

41. On Friday May 29, 2021 plaintiff reported via email to Dr. Sierra, Taylor and Cheatham ongoing violence in her unit by the Florida Cartel and Dawkins' sexual abuse.

42 - On or about June 2, 2021 plaintiff was interviewed about her May 29 email and reported to Sierra and SIS Rivas that an inmate was about to be assaulted. They took no action, and on June 2 or 3, 2021 that inmate, August GoodBirdy, was assaulted by one of the Florida Cartel's workers.

43. The chronic abuse, corruption and retaliatory culture at USP Coleman-2 endangers the very life, safety, and well being of every inmate and staff member employed or housed therein.

Relief Requested:

1. Compensatory and punitive damages in an amount to be determined at trial, for individual defendants for Constitutional claims and the USA for the FTCA Claims once exhausted.

2. Injunction enjoining plaintiffs':

   (a) transfer to, or through, USP Atlanta where she was sexually abused by staff; (See e.g. Doe v. Wooten 747 F.3d 1317 (11th Cir. 2014)).

   (b) placement into SHU in relation to her cooperation with law enforcement against FCC Coleman staff for their misconduct described herein;

   (c) complaints of illegal behavior being corruptly hidden, altered, distorted for the purpose of obstructing the initiation of, or continuance of, any law enforcement investigation of the illegal behavior described herein.

   (d) BOP staff's use of violence, verbal abuse, threats, or any means, to intimidate or retaliate against plaintiff.

   (e) BOP staff's refusal to comply with 28 CFR 115.42 in the plaintiff's housing assignments

3. Award plaintiff costs and fees.

Lawsuit History:

I have filed lawsuits in districts and Circuits across the Nation. In general 28 USC 1915(g) applies to me. Absent my files, at this time, I can remember for purposes of identification the following active cases:

1. Pinson v. USA, No. 20-cv-00070-RM (D.Ariz.)
2. Pinson v. DOJ, No. 19-cv-00235-RM (D.Ariz.)
3. Pinson v. DOJ, No. 18-cv-486-RC (D.D.C.)
4. Pinson v. BOP, No. 21-cv-00185-KWR (D.N.M.)
5. Pinson v. USA, No. 19-cv-422-RM (D.Ariz.)
6. Pinson v. USA, No. 17-cv-584-SHR (M.D.Pa.)
7. Pinson v. Mendez, No. 13-cv-2059-DCB (D.Ariz.)
8. Pinson v. FBOP, No. 19-cv-401-RM (D.Ariz.)

As well as several appeals. Some of these cases are on remand or mandamus orders from Courts of Appeals (#'s 2,6,7,8 above). All but #4, #6 above were permitted under the "imminent danger" exception to 1915(g) by the district court or by remand and reversal by their appellate Courts. I supply this in a good faith attempt to be fully transparent about my litigation history.

≡ **Tampa Bay Times**      [ SUBSCRIBE ]

ADVERTISEMENT

NEWS / **FLORIDA**

# Lawsuit settled in which 15 women alleged sexual abuse at Florida prison

The 15 women suing said officers had sexually assaulted and abused them for years. Now they've reached a settlement

   



Coleman Federal Correctional Complex in Coleman, Fl. in Sumter County. [ Times (2001) ]

By **Romy Ellenbogen**

Published May 5
Updated May 6

The United States has settled a lawsuit with 15 women who said correctional officers at a federal prison in Florida repeatedly sexually abused them.

The lawsuit contended that Bureau of Prisons officers at Federal Correctional Complex Coleman in Sumter County sexually abused female inmates for years and threatened the women if they didn't comply. The women feared that if they came forward they'd be sent to another federal facility far from their families, interrupting the education and work programs they had at Coleman, which is the largest federal prison in the U.S.

Settlements were approved by the Attorney General's office on Monday. **Three of the women received $1.26 million between them**, said their lawyer, James DeMiles. Bryan Busch, who represented 11 women, and Phil Reizenstein, who represents one woman, said they did not want to comment on the settlement amounts until funds were released.

Exhibit Attachment A

≡ **Tampa Bay Times**

SUBSCRIBE

Six of the eight accused officers admitted to having sexual contact with inmates, according to a July document filed by the United States in response to the complaint. But no officers were prosecuted. They instead retired or resigned, and some still receive benefits from their federal employment.

"I would remain optimistic and hopeful that the powers that be take a hard look at the numerous officers who were named in that indictment," DeMiles said.

He said he felt the amount given to his clients was fair. Settlements for some of the women, some whom are currently still incarcerated there, were higher than the government had initially allocated to pay. If the case had not settled, it would have gone to trial next year.



SPONSORED CONTENT
**MD: If You Have Toenail Fungus, Do This Immediately (See More)** ↗
*By ClearNails Plus*

Joe Rojas, the southeast regional vice president for the workers union, AFGE Council of Prisons, said the case was a black eye for an otherwise hardworking and upright staff. He said it's a sentiment other correctional officers share.

"I'm just sad because honestly those officers got away with a crime," Rojas said.

Lauren Reynolds received $600,000 for her settlement - but she said it wasn't about the money. Reynolds, a former inmate at Coleman, had hoped to go to trial and help spark prison reform. She said she wanted to hold the Bureau of Prisons accountable for the abuse she and others experienced.

ADVERTISEMENT

But as settlement conferences dragged on, the effects of her trauma worsened. Reynolds said she was raped by a correctional officer at Coleman for six months while serving time there. As the case slowly made its way through the courts, she said she couldn't sleep through the night. She began taking medication to try to help.

"This dragging on, it's like you're still living it," Reynolds said. "It's not the closure I wanted but it's still closure."

**UP NEXT:** Florida teen charged as adult in rigged homecoming election

**ROMY ELLENBOGEN**

**change.org**

Petition details　　Comments　　Updates





# Legal Defense for Transgender



**Jeremy Grace Pinson** **started this petition to White House**

Federal prisoner Jeremy Grace Pinson is a female inmate housed at the U.S. Penitentiary in Coleman, Florida. During the Trump administration she filed a lawsuit seeking gender-affirming surgery. Shortly thereafter, the Trump administration moved to dismiss the lawsuit and succeeded resulting in years of appeals, changed BOP policy to be more harmful to all it's Transgender inmates, and transferred Grace to a more violent prison.

**Start a petition of your own**

Start a petition of your own

This petition starter stood up and took action. Will you do the same?

Start a petition

## Updates

2 months ago
200 supporters
3 months ago
Jeremy Grace Pinson started this petition

## Reasons for signing

**change.org**

Recipient:        White House

Letter:           Greetings,

                  Legal Defense for Transgender

# Signatures

| Name | Location | Date |
| --- | --- | --- |
| Jeremy Grace Pinson | US | 2021-03-01 |
| Skyler Harper | Adrian, MI | 2021-03-01 |
| merson person | Severn, US | 2021-03-01 |
| Jxda Frazier | Bronx, US | 2021-03-01 |
| Uhhh Boba? Nope, not gonna tell- oh yeahhhh | Independence, US | 2021-03-01 |
| Lillie Boyd | Clinton, US | 2021-03-01 |
| Margaret Cuneo | Palm Harbor, US | 2021-03-01 |
| Charlee Stewart | Leopold, US | 2021-03-01 |
| Dammy A | Staten Island, US | 2021-03-01 |
| Lily Ho | Georgetown, US | 2021-03-01 |
| Francis Hernandez | Austin, US | 2021-03-01 |
| Brady McGarry | Seattle, WA | 2021-03-01 |
| Zoe Johnson | West Lafayette, US | 2021-03-02 |
| Kasey Sek | Fredonia, US | 2021-03-02 |
| Josiah Bell | Fayetteville, US | 2021-03-02 |
| Ben Dover | Bolingbrook, US | 2021-03-02 |
| Julian Grady | Brooklyn, US | 2021-03-02 |
| Izzy Bartholomew | US | 2021-03-02 |
| Narrie J | Slidell, US | 2021-03-02 |
| Abigail Deza | Springfield, US | 2021-03-02 |

| Name | Location | Date |
| --- | --- | --- |
| Megan Selzler | Rosemount, US | 2021-03-02 |
| Avarie Norman | Marietta, US | 2021-03-02 |
| Isabella Ralowicz | Lowell, MA | 2021-03-02 |
| Madalyn Elliott | Chicago, US | 2021-03-02 |
| Debra Pinson | Midwest City, OK | 2021-03-07 |
| Shakayla Thomas | Compton, US | 2021-03-07 |
| Marykate Barron | Holden, US | 2021-03-07 |
| Nora Riot | Akron, US | 2021-03-07 |
| Haley Madison's | Dallas, US | 2021-03-07 |
| Triana Nava | East Chicago, US | 2021-03-07 |
| Morgan Kelly | Harrison, US | 2021-03-07 |
| Bethlem Tekeste | Lorton, US | 2021-03-07 |
| Courtney Thomas | Oak Ridge, US | 2021-03-07 |
| Avery Armbrust | Devils Lake, US | 2021-03-07 |
| PAUL ANDERSON | US | 2021-03-07 |
| Jean Chagnon | Montréal, US | 2021-03-07 |
| Ale Reyes | Houston, US | 2021-03-07 |
| Brenda Garcia | Los Angeles, US | 2021-03-07 |
| Gaby Hernandez | Decatur, US | 2021-03-07 |
| James Kinnley | Billings, US | 2021-03-07 |
| Molly LaBar | Clifton Park, US | 2021-03-07 |
| Athena Norindr | Haltom City, US | 2021-03-07 |

| Name | Location | Date |
|------|----------|------|
| Carl Latigue | Houston, US | 2021-03-07 |
| Estrella Martinez | Houston, US | 2021-03-07 |
| Hannah Anderson | Albuquerque, US | 2021-03-07 |
| jamie ketchum | Anchorage, US | 2021-03-07 |
| Hagime Hinata | Northridge, US | 2021-03-07 |
| Mimi Rivers | Marryland, US | 2021-03-07 |
| Nadia Barrera | San Antonio, US | 2021-03-07 |
| Elaine Mitchell | Vadito, US | 2021-03-07 |
| Tesla Short Bull | Pierrie, US | 2021-03-07 |
| Dtanbi Ikeda | Pearl City, US | 2021-03-07 |
| Camili Dominguez | San Diego, US | 2021-03-07 |
| Ävoçadø Čhan | Austin, US | 2021-03-07 |
| Anderson's Brady | Irvington, US | 2021-03-07 |
| Makenzie Lanzo | Fairview, US | 2021-03-07 |
| Maia Jeffers | Midlothian, US | 2021-03-07 |
| Elizabeth Wood | Salt Lake City, US | 2021-03-07 |
| Melanie White | Jonesboro, US | 2021-03-07 |
| Samea Francis | Bloomfield, US | 2021-03-07 |
| Tyshieka Green | Washington, US | 2021-03-07 |
| Angela Bert | Houston, US | 2021-03-07 |
| Lindsey Stehr | Windermere, US | 2021-03-07 |
| zoe c | Chicago, US | 2021-03-07 |

| Name | Location | Date |
| --- | --- | --- |
| Sarah Jane | Augusta, US | 2021-03-07 |
| Racoon Artz | Austin, US | 2021-03-07 |
| Amanda Chhoeuy | Attleboro, US | 2021-03-07 |
| Rubi Gutierrez | Winchester, US | 2021-03-07 |
| Crystal Garcia | Phoenix, US | 2021-03-07 |
| D G | Braintree, US | 2021-03-07 |
| Abbigail Patton | Bauxite, US | 2021-03-07 |
| Jaiden Raposa | Wakefield, US | 2021-03-07 |
| Anaya Cooksey | Las Vegas, US | 2021-03-07 |
| Allie Hutson | Johnson City, US | 2021-03-07 |
| Danny Ververs | Denville, US | 2021-03-07 |
| Andrea Rios | Chandler, US | 2021-03-07 |
| erica griffiths | Beaverton, US | 2021-03-07 |
| Ana Banegas | Grand Prairie, US | 2021-03-07 |
| Pedro Guzman | Clifton, US | 2021-03-07 |
| Analise Aleman | Las Vegas, US | 2021-03-07 |
| Ann McDonald | Escondido, US | 2021-03-07 |
| Leslie Cortes | Vancouver, US | 2021-03-07 |
| Cameron Casais | Toms River, US | 2021-03-07 |
| Lindsey Oberman | Riverbank, US | 2021-03-07 |
| Jed Juliano | Toms River, US | 2021-03-07 |
| Brianna Anderson | Galesburg, US | 2021-03-07 |

| Name | Location | Date |
|------|----------|------|
| La'Dasmeonnia Branham | Gallatin, US | 2021-03-07 |
| O. Dazai | US | 2021-03-07 |
| Madeline Drozdowski | Scottsdale, US | 2021-03-07 |
| Lexi O'Donnell | Brick, US | 2021-03-07 |
| Jael-lynn Jones | Mechanicsville, US | 2021-03-07 |
| Brooke Letson | Chicago, US | 2021-03-07 |
| Francisco Alvarez | North Las Vegas, US | 2021-03-07 |
| Roriii fischer | Lincoln Park, US | 2021-03-07 |
| Na'ahwah Fru | Temple Hills, US | 2021-03-07 |
| alynna granados | Minneapolis, US | 2021-03-07 |
| katie kramer | Concord, US | 2021-03-07 |
| maddy schaffer | Lakeville, US | 2021-03-07 |
| Maziah rose | Moreno Valley, US | 2021-03-07 |
| Han Fain | Wylie, US | 2021-03-07 |
| Chloe Camburn | Hyde Park, US | 2021-03-07 |
| Caroline Mullaney | Ellicott City, US | 2021-03-07 |
| Ashley Bustamante | Chicago, US | 2021-03-07 |
| Neishly Cruz | Houston, US | 2021-03-07 |
| Alicia Valdez | Wichita, US | 2021-03-07 |
| Ava Zamora | Pasadena, US | 2021-03-07 |
| jennifer rosario | Canyon Country, US | 2021-03-07 |
| Natalie Naylor | Scituate, US | 2021-03-07 |

| Name | Location | Date |
|------|----------|------|
| M B | New York, US | 2021-03-07 |
| elise laviola | New Canaan, US | 2021-03-07 |
| Malia Nichols | California, US | 2021-03-07 |
| Jadyn Phillips | Hephzibah, US | 2021-03-07 |
| sierra springer | Columbus, US | 2021-03-07 |
| Alanis Hernandez | Savannah, US | 2021-03-07 |
| angela fraustro | Austin, US | 2021-03-07 |
| Angelina Gomez | Kirkland, US | 2021-03-07 |
| Emily Jimenez | Austin, US | 2021-03-07 |
| Ava Ava | Apo, US | 2021-03-07 |
| Ruby Burton | Denver, US | 2021-03-07 |
| Ariyah Scott | Beaver Falls, US | 2021-03-07 |
| Jocelin Santibañez Flores | Minneapolis, US | 2021-03-07 |
| BRENDA PORTER | Brookhaven, US | 2021-03-07 |
| Pari Moore | Henderson, US | 2021-03-07 |
| Andrew Lieb | Lumberton, US | 2021-03-07 |
| Daniel Guijarro | Spring, US | 2021-03-07 |
| Laura Modica | Leesburg, US | 2021-03-07 |
| Sara Aras | Somewhere, US | 2021-03-07 |
| Damien Richards | Cleveland, US | 2021-03-07 |
| Savannah Smith | Burns, US | 2021-03-07 |
| Akira Ryoku | Los Angeles, US | 2021-03-07 |

| Name | Location | Date |
|------|----------|------|
| Markelys Arias | Lawrence, US | 2021-03-07 |
| TaNya Monae | Tarboro, US | 2021-03-07 |
| Valeria Vega | Santa Ana, US | 2021-03-07 |
| Jiselle Floyd | Clinton, US | 2021-03-07 |
| Im Hungry | Philadelphia, US | 2021-03-07 |
| Jessica Zarate | Houston, US | 2021-03-07 |
| Amber Burton | Van Buren, US | 2021-03-07 |
| Sarah Harper | Vineyard Haven, US | 2021-03-07 |
| Heidi P | Los Angeles, US | 2021-03-07 |
| Kayleigh Hankin | Portsmouth, US | 2021-03-07 |
| Kim Hamilton | Midwest City, US | 2021-03-07 |
| Diamond Sparkle | US | 2021-03-07 |
| Janae Balfour | Seattle, US | 2021-03-07 |
| Gollagal Mcfliinn | Litchfield Park, US | 2021-03-07 |
| Heather Egry | Schenectady, NY | 2021-03-07 |
| Jamie Gibbons | Faribault, US | 2021-03-07 |
| Nicole Servetnik | South Hadley, US | 2021-03-07 |
| Kay P | Tampa, US | 2021-03-07 |
| Tim Maurer | Anaheim, US | 2021-03-07 |
| Ruth Porter | Greensboro, US | 2021-03-07 |
| Chrystal Ford | Birmingham, US | 2021-03-07 |
| Kella Stephanie | Beacon, US | 2021-03-07 |

| Name | Location | Date |
| --- | --- | --- |
| Madison Walker | Summerville, US | 2021-03-07 |
| Kourtney Mitchell | Houston, US | 2021-03-07 |
| Khepera S | Atlanta, US | 2021-03-07 |
| saoirse seidl | Appleton, US | 2021-03-07 |
| Elm Woodson | Lawrenceville, US | 2021-03-07 |
| Kaylee Griffin | Brookhaven, US | 2021-03-07 |
| Christian Cole | Belleville, US | 2021-03-07 |
| Samantha Brown | Chicago, US | 2021-03-07 |
| Barbara Brugger | Herriman, US | 2021-03-07 |
| Akahsha Hinojosa | Alice, US | 2021-03-07 |
| Elier Reyes-Morales | Greensboro, US | 2021-03-07 |
| Ivy Foster | Mobile, US | 2021-03-07 |
| bunny s | Dana, US | 2021-03-07 |
| juliana ayers | Glen Cove, US | 2021-03-07 |
| Maria Patino | Joliet, US | 2021-03-07 |
| Chloe McDonald | Riverdale, US | 2021-03-07 |
| Sarah Jimenez | Houston, US | 2021-03-07 |
| Ellie Dudek | Saratoga Springs, US | 2021-03-07 |
| Sandra Wernsdorfer | Hilton, US | 2021-03-07 |
| Raquel Alston | Franklin, US | 2021-03-07 |
| Eva Barber | Tulare, US | 2021-03-07 |
| Franklyn Gutierrez | Charlotte, US | 2021-03-07 |

| Name | Location | Date |
|------|----------|------|
| kady cruz | San ardo, US | 2021-03-07 |
| nirayana rodriguez | Hartford, US | 2021-03-07 |
| Tanurit Bhandal | San Marcos, US | 2021-03-07 |
| Kendell Tucker | Newark, US | 2021-03-07 |
| Samia Lawrence | Meriden, US | 2021-03-07 |
| Mya Pietila | Duluth, US | 2021-03-07 |
| Sarah Weber | Bedford, US | 2021-03-07 |
| Vel Rivera | Bronx, US | 2021-03-07 |
| Daniella Israil | Bayside, US | 2021-03-10 |
| genesis Camilo | Trenton, US | 2021-03-10 |
| Ann Roewe | Olathe, US | 2021-03-10 |
| Darcie Fox | Cicero, US | 2021-03-10 |
| Zoey Cupps | Mancelona, US | 2021-03-10 |
| Brooklyn Valentine | Dallas, US | 2021-03-10 |
| Leiah Pak | Fullerton, US | 2021-03-10 |
| Esayass Zemariam | Washington, US | 2021-03-10 |
| Teresa Graciano | Fontana, US | 2021-03-10 |
| Brianna poss | Cleveland, US | 2021-03-10 |
| Elizabeth Villegas | Bronx, US | 2021-03-10 |
| Ava Andrews | Cleveland, US | 2021-03-10 |
| Isabel Holliday | Tucson, US | 2021-03-10 |
| Ty Stallins | Richmond, US | 2021-03-10 |

| Name | Location | Date |
| --- | --- | --- |
| Alexis Downs | Austin, US | 2021-03-10 |
| Ryan Thompson | Upper Marlboro, US | 2021-03-10 |
| Jasmine Escamilla | Corpus Christi, US | 2021-03-10 |
| Laila Reynolds | Jacksonville, US | 2021-03-10 |
| Kellynne Paaloalo | Alliance, US | 2021-03-10 |
| Luz Gomez | Fresno, US | 2021-03-10 |
| Demi Adenodi | Maple Grove, US | 2021-03-10 |
| Addison Maher | Middleton, US | 2021-03-10 |
| Lauryn McConnell | Tulsa, US | 2021-03-10 |
| alexandra klein | Lansing, US | 2021-03-10 |
| milana kochak | Altamonte Springs, US | 2021-03-10 |
| sid Ponciroli | St. Louis, US | 2021-03-10 |
| pearl gson | Oakland, US | 2021-03-10 |
| mad sky | Philadelphia, PA | 2021-03-10 |
| Aleida Berumen | Channelview, US | 2021-03-10 |
| Vaughn Brumer | Fort Thomas, US | 2021-03-10 |
| Liliana Silva | Stafford, US | 2021-03-10 |
| Allison Velazquez | Yonkers, US | 2021-03-10 |
| Josephine Chan | New York, US | 2021-03-10 |
| Francheska Febres | Matthews, US | 2021-03-10 |
| Jaden Stovall | Detroit, US | 2021-03-10 |
| Tess Myth | Saginaw, US | 2021-03-10 |

| Name | Location | Date |
| --- | --- | --- |
| laura stukes | Midwest City, US | 2021-03-10 |
| Anais Campbell | Hollywood, US | 2021-03-10 |



**U.S. Department of Justice**
Federal Bureau of Prisons
*Consolidated Legal Center (CLC) Atlanta*

*United States Penitentiary*
*Atlanta, GA 30315*

April 30, 2021

Jeremy Pinson #16267-064
USP Coleman II
P.O. Box 1034
Coleman, FL 33521

Re:   Administrative Claim TRT-SER-2021-03377
      Personal Injury and Property:  $425,000

### CERTIFIED NUMBER 7020 2450 0000 2753 1264

Dear Claimant:

Your above referenced tort claim has been considered for administrative review pursuant to 28 C.F.R. § 0.172, <u>Authority: Federal Tort Claims</u> and 28 C.F.R. Part 14, <u>Administrative Claims Under Federal Tort Claims Act</u>.

Your claim is denied.  This memorandum serves as a notification of final denial under 28 C.F.R. § 14.9, <u>Final Denial of Claim</u>.  If you are dissatisfied with our agency's action, you may file suit in an appropriate U.S. District Court no later than six months after the date of mailing of this notification.

Sincerely,

J. Latease Bailey-Close
CLC Leader / Supervisory Attorney
CLC Atlanta

Exhibit C



**U.S. Department of Justice**
Federal Bureau of Prisons
*Federal Correctional Complex*
P.O. Box 1029
Coleman, Florida    33521-1029

MAY 10, 2021

JEREMY PINSON
Reg. No. 16267-064
FCC COLEMAN CLP
P.O. BOX 1034
COLEMAN, FL 33521

Re:    Administrative Claim #TRT-SER-2021-04688

Dear Claimant:

This acknowledges receipt of an administrative tort claim you are submitting for filing wherein
you allege personal injury, damage, or death.   The claim was accepted for filing on April 16,
2021, by the agency involved in your personal injury/property loss.   The Government is afforded
six months from the date the claim is accepted for filing to make a final disposition regarding
your claim.   Therefore, an answer to your claim will be mailed on or before October 15, 2021.
It is your responsibility to keep this office apprised of your present address.

If not included with your claim, you will need to provide a complete copy of all records **(do not
send originals as they will not be returned)** in your possession relating to this claim as well as
a detailed description of the events surrounding the alleged loss.   You are advised that failure to
provide this information may result in delay in processing, or prejudice the outcome of your
claim.

Sincerely,

Jeff Middendorf
CLC Coleman Supervisory Attorney

No. Suppl. Mailed
FILE
Exhibit D

# California Trans Women Struggle For Protection Under Prison Rape Elimination Act

### by Ed Lyon

WHEN SENATE BILL 132 TOOK EFFECT January 1, 2021, protections promised by the federal Prison Rape Elimination Act of 2003 (PREA) were finally guaranteed by law to over 1,000 inmates held by the California Department of Corrections and Rehabilitation (CDCR) who are "transgender, gender-nonconforming, non-binary, intersex, or (have) symptoms of gender dysphoria," according to a report by the *Bay Area Reporter*.

The new law allows such prisoners in California to request housing in conformance with their gender identity. But in other state systems, the battle rages on, usually in skirmishes over whether a trans prisoner has had gender-conforming surgery, which most cannot afford anyway. So in states like Texas, all trans men are incarcerated with cisgender women, and all trans women with cisgender men.

A February 2020 investigation by *NBC News* estimated that nearly 5,000 trans prisoners were being held in prisons across the U.S. But it could confirm just 15 who were housed in conformance with their gender identity — 13 trans women held with female prisoners and two trans men held with male prisoners. In the Texas Department of Criminal Justice (TDCJ), all 891 trans women are held with male prisoners, and all 89 trans men are held with female prisoners.

The problem, advocates say, is not with the law but with its lack of teeth. Since PREA was implemented in 2012, it has required prison systems to house trans prisoners where they will feel safest. But the law also leaves prison officials broad discretion in implementing this requirement.

California's new law, signed in December 2020 by Governor Gavin Newsom, is the culmination of a years-long effort by its sponsor in the state General Assembly, Democratic state Senator Scott Weiner. Known as the Transgender Respect, Agency and Dignity Act, it not only promises trans prisoners a choice in where they are housed, it also requires CDCR staff to record and use their preferred pronouns and honorifics.

But the issue goes beyond respect — it cuts to the heart of prisoner safety. In Texas, for example, though TDCJ forces its prisoners to view a PREA video and encourages them to submit anonymous reports of PREA violations, the results can work against trans prisoners, who are often locked in administrative segregation — "ad seg" — for their protection while their abusers are free to roam the general population and victimize others. In some cases, false PREA reports have been anonymously filed by prisoners to get enemies locked up in ad seg, costing them jobs, housing assignments, craft shop and college class attendance.

"This makes me wonder who is PREA serving," said Mateo De La Torre, of LGBTQ prison rights organization Black and Pink, "and who is being held accountable."

Protests against housing trans prisoners in accordance with their gender identity often include concerns about forcing cisgender women to shower with trans women. But PREA actually requires that trans prisoners be allowed to shower alone — for their own protection.

As detailed in an August 2020 *Truthout* report, trans women prisoners are "more likely to be sexually assaulted than cisgender men" by prisoners as well as prison staff — in the case of Black trans women, "13 times more likely." Fifty percent of those surveyed also responded "fearing for their safety if they report harassment, discrimination or violence."

For Carmen Guerrero, a 48-year-old trans woman sentenced to CDCR's Kern Valley State Prison after the 1995 murder of her 38-year-old lover, Mary Perkins, the protection provided by California's new law didn't arrive soon enough. In 2013, she was tortured and murdered by her cisgender male cellmate, Miguel Crespo, who had promised staff he would kill her if they forced him to share her cell. He was sentenced to death for the crime in 2019.

Syiaah Skylit, 30, a Black trans woman assigned to Kern Valley in May 2019, witnessed prisoner David Brieby attack another trans woman prisoner and testified at his trial for attempted murder. Just 11 months later, after a trip to ad seg, Skylit was assigned to the same housing area as Brieby. He assaulted her on April 10, 2020.

After she filed a PREA complaint, on April 15, 2020, Skylit was attacked by another prisoner and then sexually assaulted with a baton by a guard. She filed a PREA complaint against the corrections officer, too. Like Smith, she was not offered a victim advocate or support person. As of August 6, 2020, she had not received any documentation related to the investigation. She told her lawyers, "I'm not going to make it out of this prison alive if I'm left here any longer."

Despite the PREA prohibition against trans and cisgender prisoners showering together, San Quentin Prison officials made prisoner C. Jay Smith, a Black trans woman, suffer leers, jeers and stalking from cisgender men she was forced to shower with. Smith was raped in 2013 but was not able to see her assailant. In 2018, a prisoner exposed himself to her while housed in an adjacent cell, and she recognized him by his genitalia. Smith's requests to staff to move one or the other of them were refused.

After filing a formal PREA complaint on March 16, 2019, Smith — like Skylit — was retaliated against by prison staff with assaults, harassment and false disciplinary charges. One of those escalated to a criminal case that was later dismissed. Smith was then transferred to another facility, where she is housed with women, but where she does not have the rehabilitative and parole-oriented programming available to her before.

Despite these outrages, Wiener says he was the one subjected to death threats for the bill he sponsored to help trans prisoners. Some came from adherents of the QAnon conspiracy theory, along with accusations that he was promoting pedophilia. But similar charges came from other public officials, including fellow state Senator Melissa Melendez, a Republican, who tweeted after former Governor Jerry Brown signed a state law protecting trans students in 2013, "Say goodbye to your daughters' innocence and privacy." ◼

Sources: *NBC News, Bay Area Reporter, Sacramento Bee, truthout.org*


Exhibit E

26



U.S. POSTAGE PAID
FCM LG ENV
COLEMAN, FL
33521
JUN 14, 21
AMOUNT
**$0.00**
R2304Y122863-09

34475

1023

U.S. District Court
207 NW Second Street
Ocala FL 34475

U.S. Penitentiary Coleman-2
P.O. Box 1034
Coleman FL 33521

SCREENED
BY USMS

F.C.C. COLEMAN
MAIL ROOM
846 N.E. 54TH TERR
COLEMAN, FLORIDA
33521

THE ENCLOSED LETTER WAS
PROCESSED THROUGH SPECIAL
MAILING. THE LETTER HAS BEEN
NEITHER OPENED OR INSPECTED.
IF THE WRITER RAISES A QUESTION
OR A PROBLEM OVER WHICH THIS
FACILITY HAS JURISDICTION, YOU
MAY WISH TO RETURN THE MAIL
FOR FURTHER INFORMATION OR
CLARIFICATION. IF THE WRITER
ENCLOSED CORRESPONDENCE
FOR FORWARDING TO ANOTHER
ADDRESSEE, PLEASE RETURN THE
ENCLOSURE TO THE ABOVE
ADDRESSEE.

6.11.21

DATE          MAIL ROOM STAFF